**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua Patrick Driggs, | No. CV-18-03915-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Joshua Driggs's Application for Social Security Widower Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 28, Pl. Br.), Defendant SSA Commissioner's Response Brief (Doc. 32, Def. Br.), and Plaintiff's Reply (Doc. 32, Reply). The Court has reviewed the briefs and Administrative Record (Docs. 23, 31, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 13–21) as upheld by the Appeals Council (R. at 5–7).

## I.    BACKGROUND

On February 26, 2015, Plaintiff filed an Application for Widower's Insurance Benefits on the record of his deceased husband, Glen Driggs. (R. at 16.) Plaintiff also filed an Application on November 10, 2014 for a lump-sum death payment for the death of Glen Driggs. (R. at 16.) Plaintiff's Applications were denied initially and on reconsideration. (R.

at 16.) Plaintiff filed a written request for a hearing, and on October 20, 2016, he appeared and testified before the ALJ for a hearing on his claims. (R. at 16.)

On February 17, 2017, the ALJ issued a partially favorable decision on Plaintiff's Applications. The ALJ found that Plaintiff met all of the requirements for a lump-sum death payment as a widower of Glen Driggs and awarded Plaintiff that payment. (R. at 20.) In so doing, the ALJ found that Plaintiff is a widower as defined in 20 C.F.R. § 404.345, as modified by Program Operations Manual System (POMS) GN 00210.002A. (R. at 20.) Next, the ALJ also found that Plaintiff applied for the lump-sum payment within two years after Glen Driggs's death, and Plaintiff lived in the same household as Glen Driggs at the time of Glen Driggs's death. (R. at 20.)

However, the ALJ found that Plaintiff was not entitled to Widower Insurance Benefits because he did not meet the eligibility requirements. (R. at 20.) The ALJ found that Plaintiff was validly married to Glen Driggs as of March 5, 2014, when they wed in California. (R. at 20.) Nevertheless, the ALJ also found that Plaintiff was not eligible for Widower Insurance Benefits because Plaintiff's marriage to Glen Driggs did not last for at least nine months (the durational requirement) prior to Glen Driggs's death on June 1, 2014, and because Plaintiff did not meet any exceptions to the durational requirement. (R. 18–20.) 20 C.F.R. § 404.335(a). Accordingly, the ALJ determined that Plaintiff was not entitled to Widower Insurance Benefits, and the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 5.)

The Record reflects that Plaintiff was married to Glen Driggs on March 5, 2014, in California. (R. at 18.) Plaintiff was in a relationship and lived with Glen Driggs in Michigan from 1972 to 1984. (Pl. Br. at 7.) In 1984 they moved to Arizona where they lived until 1995, when they moved back to Michigan. (Pl. Br. at 8–9.) In 2010, they moved back to Arizona. (Pl. Br. at 9.)  Glen Driggs and Plaintiff were domiciled in Arizona and were spouses at the time of Glen Driggs's death. (R. at 18.)

Same-sex marriage was prohibited in Arizona and Michigan prior to the date Plaintiff married in California. *See Dates States and U.S. Territories Permitted Same-Sex*

1     *Marriages*, POMS GN 00210.003. Arizona did not permit same-sex marriages until

2     October 17, 2014. *See Majors v. Horne*, 14 F. Supp. 3d 1313, 1315 (D. Ariz. 2014). Further,

3     Arizona did not recognize out-of-state same-sex marriages until October 17, 2014. *Id*. By

4     their terms, the SSA regulations provide that an applicant is a widower for purposes of

5     Widower Insurance Benefits if at the time of the deceased insured spouse's death the

6     applicant had a valid marriage under the laws of the state that the deceased insured spouse

7     was domiciled. 42 U.S.C § 416(h)(1)(A)(i). Despite the terms of the regulations, the SSA

8     currently acknowledges applicants' out-of-state same-sex marriages even if the state where

9     the deceased insured spouse was domiciled did not recognize same-sex marriages as valid

10    at the time of death, though this has not always been the case. *See generally, e.g.*, *Williams*

11    *v. Colvin*, No. 14-8874 (N.D. Ill.). Defendant acknowledges that Plaintiff had a valid

12    marriage to Glen Driggs at the time of his death, even though Glen Driggs was domiciled

13    in Arizona at the time of his death, and even though Arizona did not recognize their

14    California marriage as valid at that time. (R. at 18.)

15         **II.**     **LEGAL STANDARD**

16         In determining whether to reverse an ALJ's decision, the district court reviews only

17    those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

18    517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

19    determination only if it is not supported by substantial evidence or is based on legal error.

20    *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

21    that a reasonable person might accept as adequate to support a conclusion considering the

22    record as a whole. *Id.* To determine whether substantial evidence supports a decision, the

23    Court must consider the record as a whole and may not affirm simply by isolating a

24    "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is

25    susceptible to more than one rational interpretation, one of which supports the ALJ's

26    decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

27    (9th Cir. 2002) (citations omitted).

28

1

### III.   ANALYSIS

Plaintiff raises two constitutional claims of legal error. The claims focus on Defendant's use of the nine-month marriage durational requirement in evaluating Plaintiff's eligibility for Widower Insurance Benefits. First, Plaintiff argues that Defendant violated his right to equal protection under the Fifth Amendment to the U.S. Constitution by denying his Application for Widower Insurance Benefits because his marriage to Glen Driggs did not last nine months. Specifically, Plaintiff claims that he would have otherwise qualified for Widower Insurance Benefits but for Arizona's prohibition of same-sex marriage and Defendant's incorporation of that prohibition in evaluating Plaintiff's eligibility for benefits. (Pl. Br. at 3–4, 13.) Thus, Plaintiff argues that Defendant treats Plaintiff differently than surviving opposite-sex spouses who did not face similar legal barriers in meeting the durational requirement. Second, Plaintiff argues that Defendant violated his fundamental liberty interest in forming an intimate family relationship under the Fifth Amendment by relying on an unconstitutional state law when denying his Application for Widower Insurance Benefits. (Pl. Br. 13–14.) As discussed below, the Court agrees with Plaintiff's equal protection claim and finds that Defendant violated Plaintiff's right to equal protection under the Fifth Amendment. However, the Court rejects Plaintiff's due process claim.[1]

---

[1] Defendant's reliance on the durational requirement in evaluating Plaintiff's eligibility for Widower Insurance Benefits does not burden any of Plaintiff's fundamental rights. (Def. Br. at 10.) *See Weinberger v. Salfi*, 422 U.S. 749, 772 (1975). Defendant's denial of Plaintiff's Application did not burden Plaintiff's ability to form any relationship with his spouse since the denial of benefits did not prevent Plaintiff's marriage. Nevertheless, when the government undertakes to provide a benefit to one group of people, it must do so on equal terms unless it has sufficient justification for not doing so. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). Plaintiff's claim that Defendant discriminatorily evaluated his eligibility for Widower Insurance Benefits is properly subject to equal protection analysis. *Diaz v. Brewer*, 656 F.3d 1008, 1013 (9th Cir. 2011) ("But when a state chooses to provide such benefits, it may not do so in an arbitrary or discriminatory manner that adversely affects particular groups that may be unpopular."); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, (1973).

**A.      Defendant's use of the durational requirement in evaluating Plaintiff's eligibility for Widower Insurance Benefits discriminatorily impacts Plaintiff.**

"The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). "It is also true that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). A facially neutral law may violate equal protection if it has a discriminatory impact. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 260, (1979). Demonstrating a discriminatory impact or effect is necessary but insufficient on its own to sustain an equal protection challenge to government action. *See Palmer v. Thompson*, 403 U.S. 217, 226 (1971); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977).

Defendant apparently argues that the use of the durational requirement has no disparate impact in Plaintiff's case. (Def. Br. at 17–20.) Instead, Defendant argues that the durational requirement can result in seemingly unfair applications for same-sex couples and opposite-sex couples, and Defendant offers hypothetical examples of potential unfairness that could result from the use of the bright-line durational requirement. (Def. Br. 17–19.) Since the durational requirement can result in seeming unfairness to both same-sex and opposite couples, Defendant argues that there is no disparate impact. Simply put, Defendant argues that all marriages that are shorter than nine months do not meet the durational requirement, and this is true regardless of whether the couple is opposite-sex or same-sex and regardless of  the reason the marriage did not last at least nine months. (Def. Br. at 17.)

The Court is unpersuaded by Defendant's arguments. Undeniably, Defendant's hypotheticals provide conceivable examples of unfair barriers to meeting the durational

requirement for  same-sex couples and opposite-sex couples alike. However, these examples are not apt comparisons to this particular case. The durational requirement incorporates Arizona's marriage laws, up to October 17, 2014, that placed a unique and targeted burden on same-sex couples. Arizona's same-sex marriage prohibition placed no burden on opposite-sex couples seeking to marry, and therefore, it did not keep opposite-sex couples from meeting the durational requirement. Accordingly, the durational requirement does not apply equally to Plaintiff and similarly situated opposite-sex spouses because it incorporates state laws that created unequal barriers to marriage for certain individuals. Therefore, the durational requirement, as applied here, discriminatorily impacts Plaintiff.

> **B.** **Defendant had a discriminatory purpose in applying the durational requirement to Plaintiff's application and violated Plaintiff's right to equal protection of the law.**

Proof that a discriminatory purpose motivates government action is required to sustain an equal protection claim. *See Vill. of Arlington Heights,* 429 U.S. at 264–66; *see also Davis*, 426 U.S. at 242. This rule logically follows from the reality that any bright-line governmental classification will result in some disparate impact among individuals or groups. *See e.g.*, *Califano v. Jobst*, 434 U.S. 47, 53 (1973). A discriminatory purpose need not be the only purpose motivating governmental action in order to find an equal protection violation since governmental action is rarely motivated by only a single concern. *See Vill. of Arlington Heights,* 429 U.S. at 265–66. There are numerous ways of proving a discriminatory purpose, and direct proof, *i.e.*, smoking gun statements of intent, is helpful but unnecessary. *See Vill. of Arlington Heights,* 429 U.S. at 266–68. When a discriminatory purpose is established, the normal deference given to governmental decision-making is bypassed and the governmental action is subjected to heightened scrutiny. *Id.* at 265–66.

The Ninth Circuit's decision in *Diaz* illustrates how a facially neutral law can have a discriminatory purpose through its incorporation of other laws that have a discriminatory purpose. *Diaz*, 656 F.3d at 1012–15. In *Diaz*, the Ninth Circuit upheld the district court's

grant of a preliminary injunction against an Arizona statute that violated equal protection by limiting eligibility for family health care coverage to married heterosexual employees. *Id*. at 1015. The Ninth Circuit agreed with the district court that the Arizona statute was facially neutral but had a discriminatory effect because opposite-sex couples could retain their healthcare by marrying but same-sex couples could not since the Arizona Constitution banned same-sex marriage. *Id*. at 1012–15. Moreover, the Ninth Circuit agreed with the district court that none of the offered justifications for the statute survived scrutiny because the rule necessarily depended upon "distinguishing between homosexual and heterosexual employees, similarly situated." *Id*. at 1014. Since the offered justifications for the statute— promoting marriage, costs-saving, and reducing administrative burdens—relied on discriminating against same-sex couples, the Ninth Circuit concluded that the statute was based on "'a bare…desire to harm a politically unpopular group.'" *Id*. at 1014–15 *quoting Lawrence v. Texas,* 539 U.S. 558, 580 (2003) (O'Connor, J., concurring).

    Following the logic of *Diaz*, this Court finds that Defendant had a discriminatory purpose in using the durational requirement to deny Plaintiff's Application for Widower Insurance Benefits. Defendant expressly incorporates state marriage laws into the evaluation of eligibility for Widower Insurance Benefits. 42 U.S.C § 416(h)(1)(A)(i). Some of these laws, including Arizona's, had unconstitutionally denied same-sex couples access to marriage for discriminatory purposes in violation of equal protection. *See generally Obergefell v. Hodges*, 135 S. Ct. 2584 (2015); *see also Majors*, 14 F. Supp. 3d at 1315. The Court is unpersuaded by Defendant's arguments that Plaintiff was not deprived of benefits because of "Arizona's marriage laws, nor because of [his] sexual orientation or gender," but only because of unfortunate timing. (Def. Br. at 17.) The durational requirement is not an amorphous requirement. It is a duration of *marriage* requirement, and Defendant considers the validity of a given marriage by applying state law. Plaintiff was denied the opportunity to marry not just in Arizona, but in many states, because of marriage laws that prohibited him from marrying Glen Driggs due to his sexual orientation and gender. Defendant relied on these laws to deny Plaintiff's Application for Widower

1  Insurance Benefits.  Thus, the discriminatory purpose of Arizona's same-sex marriage ban

2  is imputed to Defendant's decision to rely on that ban in Plaintiff's case.  *See Diaz*, 656

3  F.3d at 1012–15.

4      The Supreme Court has also been instructive here. In *Obergefell*, the Supreme Court

5  listed survivorship benefits as one of the benefits that same-sex couples are required to

6  have equal access to in order to preserve equal protection of the law. *Obergefell*, 135 S. Ct.

7  at 2601. Additionally, the Supreme Court has held that it is a violation of equal protection

8  to deny same-sex married couples equal access to the benefits enumerated in *Obergefell.*

9  *Pavan v. Smith*, 137 S. Ct. 2075, 2078 (2017). Defendant's reliance on the denial of

10  Plaintiff's equal access to marriage because of state law also runs afoul of equal protection.

11  *See Diaz*, 656 F.3d at 1012–15; *see also In re Fonberg*, 736 F.3d 901, 902–03 (9th Cir.

12  Jud. Council 2013).

13      The Court is unconvinced by Defendant's suggestion that Plaintiff was not

14  discriminated against because he *could* have married in California or another state sooner,

15  or because Glen Driggs hypothetically could have lived longer.[2] (Def. Br. at 19–20.)

16  (emphasis added). While Defendant states that these different circumstances would have

17  resulted in Plaintiff receiving benefits and obviated the need for this case, it may not have

18  been clear to Plaintiff that going out of state for marriage sooner would have resulted in

19  eligibility for Widower Insurance Benefits. Arizona did not recognize same-sex marriages

20  any earlier than October 17, 2014. Moreover, the SSA regulations by their terms *still* limit

21  recognition of valid marriages for Widower Insurance Benefits to those recognized by the

22  state of domicile. 42 U.S.C § 416(h)(1)(A)(i). Finally, the timing of Glen Driggs's death is

---

24  [2] The Court is also unpersuaded by Defendant's assertion that Plaintiff was not

25  discriminated against since Defendant determined him to be a "widower" for purposes of

26  the lump-sum death benefit. (Def. Br. at 17.) There is no durational requirement for lump-sum death benefit eligibility, so Defendant did not rely on discriminatory barriers to Plaintiff marrying in evaluating Plaintiff's eligibility for that benefit. 42 U.S.C. § 402(i); 42 U.S.C. § 416(g)(1). The duration of Plaintiff's marriage was irrelevant to his eligibility

27  for the lump-sum death benefit because he was validly married in California and Defendant recognized the validity of that marriage. (R. at 18, 20.) Contrarily, Defendant relies on

28  discriminatory marriage barriers in evaluating Plaintiff's failure to meet the durational requirement applicable to Widower Insurance Benefits.

irrelevant to whether Defendant purposefully discriminated against Plaintiff under the actual facts of this case. Moreover, it is no argument to claim that Plaintiff would not have been discriminated against had his spouse lived longer. Ultimately, Defendant's hypothetical circumstances highlight that Plaintiff encountered barriers to pursuing a crucial requirement—marriage—for Widower Insurance Benefits that opposite-sex spouses did not.

Under any level of scrutiny Defendant's decision to rely on the discriminatory barriers to marriage that Plaintiff faced fails. *See Diaz*, 656 F.3d at 1014–15. While the durational requirement would ordinarily have a rational basis, Defendant's application of the requirement violates equal protection because it depends on unconstitutional barriers to same-sex marriage to achieve its otherwise permissible results. *Compare Diaz*, 656 F.3d at 1014–15, *with Salfi*, 422 U.S. at 751. Defendant's reliance on discriminatory laws effectively invalidates the otherwise permissible goals of the durational requirement.

**C.    The appropriate remedy is to remand this case for further proceedings.**

In his Complaint Plaintiff requests that this case be "reversed for an award of benefits or, alternatively, either modified or remanded for further proceedings." (Doc. 1 at 2.) "Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).

Outstanding issues exist and the appropriate remedy is to remand this case for further proceedings. Because of the legal errors made by the ALJ, the factual determination necessary to properly evaluate Plaintiff's eligibility for Widower Insurance Benefits has not been performed. The necessary inquiry that must be performed on remand is whether Plaintiff would have married sufficiently early to satisfy the durational requirement but for unconstitutional state laws prohibiting same-sex marriage. Evidence points in both directions on this issue and it is Plaintiff's burden on remand to establish that he would have met the requirements for Widower Insurance Benefits but for Defendant's reliance on unconstitutional marriage laws.

1      **IT IS THEREFORE ORDERED** reversing the February 17, 2017 decision of the

2   Administrative Law Judge (R. at 13–21), as upheld by the Appeals Council (R. at 5–7.)

3      **IT IS FURTHER ORDERED** remanding this case to the Social Security

4   Administration for further proceedings consistent with this order. Specifically, Defendant

5   must evaluate whether Plaintiff would have been eligible for Widower Insurance Benefits

6   but for state laws prohibiting same-sex marriage, and if so, Defendant must award Plaintiff

7   Widower Insurance Benefits.

8      **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment

9   consistent with this Order and close this case.

10      Dated this 29th day of May, 2020.

11

12

13                                                    _____

14                                                    Honorable Diane J. Humetewa
                                                       United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28